Clerk's Office
Filed Date: 3/4/2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
XING CHEN,

                    Petitioner,

   -against-

WARDEN OF GREENHAVEN
CORRECTIONAL FACILITY,

                    Respondent.
-------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
19-cv-06771 (CBA)

**AMON, United States District Judge:**

Petitioner Xing Chen ("Chen") filed for a writ of habeas corpus under 28 U.S.C. § 2254 on December 2, 2019. Chen alleges that he is being held in state custody in violation of his federal constitutional rights. (ECF Docket Entry No. ("D.E. #") 1 ("Pet.").) Chen makes two claims for habeas relief. First, he argues that the Kings County District Attorney's Office failed to turn over U visa documentation that was prepared for Den Fen Lin ("Lin"), Chen's intended victim and a witness at Chen's trial. Chen argues that this failure by the District Attorney's Office constitutes a violation of Brady v. Maryland, 373 U.S. 83 (1963). Second, Chen argues that his trial counsel was constitutionally ineffective for failing to request the U visa documents. For the following reasons, Chen's petition for habeas corpus is DENIED.

BACKGROUND

**I.    THE TRIAL AND 440 COURT PROCEEDINGS**

In 2007, Feng Jiang ("Jiang") filed for divorce from her husband, Chen. (D.E. # 8 ("Gov. Aff. & Br.")[1] ¶ 46.) Sometime thereafter, she began dating Lin, an acquaintance of Chen's. (Id.

---

[1] In support of their opposition, the Government submitted a 70-page document that includes both an affidavit from Assistant District Attorney Seth M. Lieberman of the Kings County District Attorney's Office as well as a formal

¶ 48.) On multiple occasions in 2008, Chen made threatening comments to Lin and Jiang. (See Id. ¶¶ 48, 50.) On November 12, 2008, Chen told Lin via telephone "that he wanted to kill him." (Id. ¶¶ 12-13.) On the same night, he confronted Jiang and told her that he "want[ed] to make sure" that she and Lin "die[d] in a very horrible way." (Id. ¶ 14 (quoting D.E. # 9-2 ("Trial Tr. 1") at 231:10-232:12).) On December 12, 2008, Chen and an associate went to a parking garage at 774 47th Street in Queens, intending to confront Lin regarding his relationship with Jiang. (Id. ¶ 51.) Instead, when Lin and his brother-in-law Zhen Ren Lin ("Zhen") exited their vehicle and began to leave the garage, Chen and his associate emerged from hiding and attacked Zhen. (Id. ¶ 32.) In the ensuing altercation, Zhen was beaten with a pipe and stabbed to death; Lin ran away. (Id. ¶¶ 18, 32.) Shortly after Zhen's murder, Chen admitted to the police that he "killed the wrong guy." (Pet. Ex. A ("440 D&O") at 7 n.2.)

At trial, the jury heard considerable evidence of Chen's guilt. This evidence included, among other things:

   a) Lin's eyewitness account of the night Zhen was murdered, (Trial Tr. 1 at 161:1-169:10);

   b) Testimony that Chen told a police officer after his arrest "I'm sorry. I killed the wrong guy," (D.E. # 9-3 ("Trial Tr. 2") at 701:14-22);

   c) Chen's apparently inconsistent testimony at trial that another individual, Ah San, stabbed Zhen — Chen testified that he had brought Ah San to the confrontation with Zhen and Lin because Ah San "was not involved in family affairs," but that

---

memorandum of law. Citations to the affidavit are made with paragraph (¶) cites and citations to the memorandum of law reference the internal pagination of the memorandum of law.

       Ah San inexplicably started fighting with Zhen and ultimately stabbed him to death, (440 D&O 7 n.2; Trial Tr. 2 at 599:4-5, 639:9-645:22);

d) Testimony from Detective Nagrowski, who interviewed Chen after his arrest, that Chen told him that he had been armed with a knife and his accomplice had been armed with a pipe when they went to confront Zhen and Lin, (Trial Tr. 1 at 280:9-22);

e) Testimony from the doctor who conducted an examination of Zhen's body, which confirmed that Zhen had suffered "multiple blunt and sharp course injuries" consistent with injuries from a knife and a pipe, (id. at 405:17-18, 408:3-8, 411:18-412:4); and

f) Evidence that Zhen's blood was identified on the left cuff of the jacket Chen wore on the night of the murder. (Trial Tr. 2 at 716:18-19).

Chen and his counsel were not told that Lin had applied for a U visa application in advance of trial. (Gov. Aff. & Br. ¶¶ 82-84.) A U visa is "an immigration benefit that can be sought by victims of certain crimes who are currently assisting or have previously assisted law enforcement in the investigation or prosecution of a crime, or who are likely to be helpful in the investigation or prosecution of criminal activity." (Id. ¶ 83 (quoting U Visa Law Enforcement Certification Resource Guide).) As part of the U visa application process, the Kings County District Attorney's Office prepared a document certifying that Lin had been helpful in the investigation of Zhen's murder. (Id.) Lin's U visa application was denied in advance of trial. (Id. ¶ 104.) Neither the U visa certification document nor the underlying U visa application was disclosed to the jury at trial.

After a jury trial, Chen was convicted of second-degree murder for killing Zhen. On December 10, 2011, the Supreme Court of New York, Kings County sentenced Chen to twenty-

3

five years to life for committing murder in the second degree. (Pet. 1.) Chen appealed his sentence to the New York Supreme Court Appellate Division, Second Department (the "Appellate Division"), which affirmed his conviction. People v. Chen, 985 N.Y.S.2d 158 (App. Div. 2014); (Pet. 1.) Chen sought leave to appeal to the New York Court of Appeals. On December 4, 2014, his application was denied. People v. Chen, 25 N.E.3d 354 (N.Y. 2014); (Pet. 2; Gov. Aff. & Br. ¶ 72.)

On April 7, 2015, Chen filed a motion in New York State court under Article 440 of the New York Criminal Procedure Law to vacate his conviction. (Pet. 3.) On April 26, 2016, the court ordered a hearing to evaluate the merits of the 440 motion. (440 D&O 1.)

At the 440 hearing the court heard testimony from Lin; Joseph Burke ("Burke"), Marc Fliedner ("Fliedner") and Deirdre Bialo-Padin ("Bialo-Padin"), all employees of the Kings County District Attorney's Office; and Mark Fonte ("Fonte") and Edward Donlon ("Donlon"), both attorneys involved in Chen's defense. (Id.) Chen's trial counsel, Edward Donlon, testified that Lin's immigration status and sham marriage were explored during cross examination. (D.E. # 8-6 ("440 Tr.") at 137:5-9.)

Before the 440 court, Chen argued that the first U visa certification was Brady material that would have been used to impeach Lin's credibility at trial and would have led to additional impeachment information, specifically the underlying U visa application, which was not in the state's possession. (440 D&O 6.) The State conceded that the U visa certification was not turned over to the defense but argued that the document was not material under either the reasonable probability or the reasonable possibility standards of materiality. (Id.) The 440 court agreed and found that Chen's claims were without merit given the overwhelming evidence of his guilt. (Id. at 7).

Chen applied to the Appellate Division for leave to appeal the 440 court's decision and the Appellate Division denied the application on July 7, 2019. (Pet. at Ex. B at 1.) Chen now seeks a writ of habeas corpus on the grounds that he was deprived of his due process rights to a fair trial and to the effective assistance of counsel. (Pet. 3.)[2]

## II.   LIN'S IMMIGRATION STATUS

Lin came to the United States from China on a B1 Visa in 1996. (440 D&O 2.) Lin remained in the country past the expiration of his visa, and, in 2003, he entered into a fraudulent sham marriage for immigration purposes. (Id.)

After Zhen's murder, Lin was contacted by an immigration attorney, Ms. Khan ("Khan"), who advised him that he was eligible for a U visa. (Id.; Gov. Aff. & Br. ¶ 82.) Although Lin was not familiar with what a U visa was, a petition was prepared for him, which he signed on December 29, 2008. (Gov. Aff. & Br. ¶ 84.) Khan's office informed Lin that the document was being submitted on his behalf because he was the intended victim of and witness to a crime. (440 D&O 2.)

Before Chen's trial for Zhen's murder, Khan spoke with Fliedner, an assistant district attorney involved in Chen's case. She asked Fliedner to have the District Attorney's Office prepare a form for use in Lin's U visa application certifying that Lin was the victim of a qualifying crime and that he had been helpful in the investigation of that crime. (Id.) This certification document was distinct from the U visa application, which was independently prepared by immigration attorneys working with Khan. (440 Tr. 1 at 29:10-30:25.) Fliedner testified during the 440 hearing that this was his first time preparing such a certification form, and that, although he could not recall

---

[2] Although Chen is represented by counsel, his counsel never submitted a memorandum of law to accompany Chen's petition, and never submitted any reply memoranda in response to the Government's briefing.

5

the specifics of any conversations with defense counsel regarding the U visa, he believed defense counsel was aware of Lin's immigration status. (440 D&O 3, 4.) Burke, who replaced Fliedner as lead ADA on the case, also testified that he believed that defense counsel was aware of Lin's immigration status and the U visa. (Id. at 4, 5.) Burke further testified that the "very strong language in the [U visa certification] that no promises have been made and will not be made regarding a U-Visa . . . led [him] to that determination that this was not Brady material." (Id. at 5.) Lin's first U visa application was denied on July 7, 2010, (Gov. Aff. & Br. ¶ 74), prior to Lin's testimony at trial in October 2011, (440 D&O 5).

Before Chen's trial, Fliedner and Chen's counsel agreed that all "appropriately discoverable materials" in this matter would be provided to the defense through Open File Discovery ("OFD"), rather than by motion. (Id. at 3.) In addition to the OFD agreement, Chen's counsel made a written request for discovery of "materials that would be consistent with a potential psychological defense." (Id.) Despite being aware of Lin's sham marriage, Chen's counsel did not make any specific request to the District Attorney's Office for information regarding the sham marriage or Lin's immigration status. (Id. at 6.)

On July 12, 2013, after the trial had ended, Bialo-Padin, the assistant district attorney responsible for certifying U visa applications in the District Attorney's office, prepared a second U visa certification for Lin. (Id. at 5; Gov. Aff. & Br. ¶ 117.) During the 440 hearing, Bialo-Padin testified that she informed defense counsel of this second certification, as well as the first certification prepared by Fliedner, out of an "excess of caution." (440 Tr. 121:21-122:3.) The second U visa petition was denied on September 2, 2013. (Gov. Aff. & Br. ¶ 74.)

6

## DISCUSSION

### I. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the district court's review of a claim adjudicated on the merits in state court "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). A habeas petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was: 1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or 2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This standard is "'difficult to meet' and 'highly deferential.'" Cullen, 563 U.S. at 181 (internal citation omitted) (first quoting Harrington v. Richter, 562 U.S. 86, 102 (2011); and then quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). Additionally, the factual findings of state courts are presumed to be correct. Id. § 2254(e)(1); see generally Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (explaining the presumption's contours). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court's decision is "contrary to" federal law if the petitioner can demonstrate "(1) that the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court, or (2) that, when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of federal law if "a state court 'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Carmichael

7

v. Chappius, 848 F.3d 536, 544 (2d Cir. 2017) (alteration in original) (quoting Williams, 529 U.S. at 413). For the state court's application of federal law to be "unreasonable" a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." Id. (quoting Harrington, 562 U.S. at 103). In the "context" of the AEDPA, "'clearly established law' signifies 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Howes v. Fields, 565 U.S. 499, 505 (2012) (quoting Williams, 529 U.S. at 412).

## II.   ANALYSIS

Chen seeks a writ of habeas corpus on two grounds: (1) that he was denied a fair trial because the state failed to disclose, as required by Brady, Lin's U visa certification prepared by Marc Fliedner or Lin's U visa application, (Pet. 5); and (2) that he was denied the effective assistance of trial counsel because of defense counsel's failure to make a specific discovery request for information related to Lin's immigration status, (id. at 6).

### A. Brady Violation

Chen argues that the State violated Brady when it failed to disclose Lin's U visa certification and application, because "the application contained gross misstatements of fact made under oath that contradicted the witness's trial testimony." (Pet. 5.) Chen goes on to argue that "[h]ad the trial jury been aware of the [immigration] benefit and the misstatements of fact . . . the result at trial would have been different." (Id. at 3.) In response, the State argues that the U visa application and the prosecution's certification thereof were not material evidence, since the evidence of Chen's guilt, apart from Lin's testimony, was overwhelming and the impeachment value of the certification and application were insignificant. (Gov. Aff. & Br. 4.) Additionally, the State argues that the 440 court's adjudication of Chen's claims neither "resulted in a decision

8

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (Id. at 3 (quoting 28 U.S.C. § 2254(d)).) I agree.

1. **Standard**

The prosecution has a constitutional obligation under Brady to disclose exculpatory evidence to a defendant in a criminal matter. To establish a Brady violation, a petitioner must make three showings: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Prejudice results from the suppression of material evidence "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 280 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). A "reasonable probability" exists where nondisclosure "undermines confidence in the outcome of the trial." Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting Bagley, 473 U.S. at 678). "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough 'to undermine[] confidence in the outcome of the trial.'" Smith v. Cain, 565 U.S. 73, 75 (2012) (alteration in original) (quoting Kyles, 514 U.S. at 434).

2. **Application**

Chen makes two, interlocking Brady claims that center on documents prepared in connection with Lin's application for a U visa. First, Chen argues that the District Attorney's office failed to disclose the U visa certification documents, "despite having an 'open file discovery policy.'" (Pet. 5.) Second, and as a result, his counsel was not alerted to the existence of Lin's

9

underlying U visa application, which included material contradictions of his testimony at trial. (Id.)  Specifically, Lin's U visa application includes the following question: "Have you EVER been present or nearby when any person was: Intentionally killed, tortured, beaten, or injured?" (See D.E. # 9-6 at 66.)  In the U visa application submitted to the 440 court and signed by Lin, the box for "No" is ticked.  (Id. at 68).  As Chen highlights, this answer is inconsistent with Lin's testimony that he was an eyewitness to the stabbing of Zhen.

The 440 court found, and I agree, that, "in this case, had the impeachment material concerning the witness' immigration petition been timely disclosed, there is no reasonable probability that the verdict would have been different."  (440 D&O 7 (citing cases).)  Lin's testimony did provide an eyewitness account of the murder and establish Chen's motive for the murder.  But other substantial additional evidence supported Chen's conviction.  As the 440 court stressed, and as detailed below, the jury was presented with overwhelming evidence of Chen's guilt, apart from Lin's testimony.  This evidence included, among other things, 1) Chen's confession to the police, (Trial Tr. 2 at 701:14-22); 2) evidence of Zhen's DNA recovered from Chen's jacket, (id. at 716:18-19); 3) Chen's inconsistent testimony, (440 D&O 7 n.2); and 4) medical evidence that Zhen was both stabbed with a knife and beaten with a pipe, (Trial Tr. 1 at 405:17-18).  Even if Lin's testimony were excluded entirely, the prosecution still would have had a strong case for conviction.  (See 440 D&O 7 ("[O]ther evidence in the record provided strong support for the conviction even if the witness' testimony had been excluded entirely.")). Moreover, the impeachment value of the certification document was substantially diminished by the fact that Lin's U visa application was denied in advance of trial, and that Lin did not re-apply for a U visa again until after the trial had concluded.  In short, there was no pending application at the time of his trial testimony.

10

Chen has failed to show that the 440 court's decision with regard to either U visa document was "so lacking in justification" as to constitute an unreasonable application of clearly established federal law. Carmichael, 848 F.3d at 544 (quoting Harrington, 562 U.S. at 103). Accordingly, under the AEDPA, I must defer to the 440 court's analysis.

But even if the 440 court were not entitled to AEDPA deference, I would find that defense counsel's inability to review the underlying U visa application did not prejudice Chen. Chen's argument for prejudice appears to be that Lin's answer that he was not "present or nearby when any person was: Intentionally killed, tortured, beaten, or injured," (see D.E. # 9-6 at 66), contradicts the crux of Lin's testimony—that he was an eyewitness to Zhen's murder. But the evidence before the jury, as well as testimony submitted to the 440 court, mitigates the impact of this purportedly exculpatory evidence.

To begin, the notion that Lin was not an eyewitness to Zhen's murder is inconsistent with other evidence in the case. The Government presented testimony at trial from a police officer who responded to the incident and identified Lin as an eyewitness at the scene of Zhen's murder. (See, e.g., Trial Tr. 1 at 96:3-97:20.) And during cross-examination, Chen's counsel also placed Lin at the scene of the murder, and questioned Lin about what he saw on the night of the murder. (Id. at 189:18-192:25.)

Moreover, Lin provided an explanation for the discrepancy in the application in his testimony to the 440 court. Namely, that "someone from the [immigration] attorney's office actually prepare[d] the document for [Lin] to sign," that "they did not explain anything" before Lin signed it, that the attorneys did not ask "any questions about [Lin's] life before they asked" him to sign the application, and that Lin "basically" "signed it without having any idea what was in it." (440 Tr. 28:16-29:2.) The testimony that Lin signed a pre-written application, prepared by

11

an attorney who asked him no questions, undermines the exculpatory effect of the purported contradictions in the application. And as described above, the evidence of Chen's guilt was overwhelming, such that Lin's testimony was not essential to secure a conviction.

In sum, I find that the government's failure to provide U visa documents to Chen did not prejudice Chen, and therefore cannot support a Brady violation. As detailed above, there is no "reasonable probability" that the U visa evidence would have altered Chen's conviction. Strickler, 527 U.S. at 280 (quoting Bagley, 473 U.S. at 682). Accordingly, Chen's Brady arguments fail to support habeas relief.

### B. Ineffective Assistance of Counsel

Chen next argues that he had ineffective assistance of counsel, since his counsel failed to make a specific discovery request for information related to Lin's sham marriage and immigration status. (Pet. 6.) The State argues that defense counsel "can hardly be considered not 'competent'" for the omission and that Chen was not prejudiced by the omission in any event. (Gov. Aff. & Br. 22.) For the following reasons, I agree.

#### 1. Standard

To establish a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must satisfy the two-prong test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). A petitioner "must demonstrate both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" Waiters v. Lee, 857 F.3d 466, 477 (2d Cir. 2017) (quoting Strickland, 466 U.S. at 687). "To establish prejudice under Strickland, a habeas petitioner must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 479 (quoting Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005)). A reasonable probability means that the deficient performance created "'a probability sufficient to undermine confidence in

12

the outcome,' and thus the chance of an alternate result must be 'substantial, not just conceivable.'" Id. at 480 (internal citation omitted) (first quoting Strickland, 466 U.S. at 694; and then quoting Cullen, 563 U.S. at 189).

Performance is considered deficient when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687. However, counsel is generally "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ." Id. at 697. Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

## 2. Application

The State argues that Chen's ineffective assistance claim is unexhausted, since Chen did not present that claim in his motion for leave to appeal to the Appellate Division from the denial of his 440 motion. (Gov. Aff. & Br. 20.) Indeed, Chen does not reference the ineffective assistance claim in his memorandum of law in support of his application for leave to appeal to the Appellate Division or in his reply memorandum supporting that application. (See D.E. # 8-10; D.E. # 9-7.) Regardless, "[w]hether construed as unexhausted but without merit or considered on the merits applying AEDPA deference, the result is the same." Romero v. Crowley, 17-cv-3298 (AMD) (LB), 2020 WL 2616394, at *10 (E.D.N.Y. Apr. 22, 2020), report and recommendation adopted, 2020 WL 2615938 (E.D.N.Y. May 22, 2020). Chen's ineffective assistance claim fails on the merits for substantially the same reasons as does his fair trial argument.

As the 440 court stated, "a review of the record clearly establishes that trial counsel[] provided meaningful representation." (440 D&O 8.) In this case, the failure to pursue additional

13

discovery related to the potential impeachment of Lin did not constitute constitutionally deficient performance. This is especially true where Chen's counsel elicited more damning testimony from Lin at trial regarding his sham marriage. (Trial Tr. 1 at 211:22-212:25); see Cumberland v. Graham, 08-cv-4389 (LAP) (DF), 2014 WL 2465122, at *39 (S.D.N.Y. May 23, 2014) ("Under Strickland, the performance of [counsel] should not be found to have been constitutionally deficient where, even if he did not use every possible avenue to impeach [the witness's] credibility, he nonetheless conducted a cross-examination that brought out an important discrepancy.").

As to the prejudice prong, the effect of this impeachment evidence likely would have been minimal. As discussed above, the notion that Lin was not present at the scene of the murder is inconsistent with other testimony at trial. Moreover, the State convincingly argues that Lin's motivation to implicate Chen in revenge for his brother in law's murder was much stronger than any hope he may have had that the government would have supported his application to the stay in the country. (Gov. Aff. & Br. 11). Yet the jury convicted Chen anyway. In addition, the State argues that had defense counsel used the certification to impeach Lin, it would have opened the door to prior consistent testimony, made before Lin ever learned about the U visa, in which Lin discussed a prior threat against him made by Chen, as well as his recollection of the attack against Zhen. (Id. at 9.) Moreover, as explained in detail above, the evidence in support of Chen's conviction was overwhelming.

Thus, even if trial counsel had made a specific discovery request and impeached Lin's testimony at trial, the likely outcome of the trial would not have been different. See Gonzalez v. Ercole, No. 08-cv-403 (CS) (PED), 2011 WL 5924443, at *18 (S.D.N.Y. Sept. 22, 2011) (denying an ineffective assistance of counsel claim on the grounds that the petitioner failed "to explain how the result of the proceeding would have been different had the [discovery] been produced"), report

and recommendation adopted, 2011 WL 5924431 (S.D.N.Y. Nov. 28, 2011). Accordingly, I find that Chen cannot establish a "reasonable probability" that, but for his counsel's failure to request impeachment evidence related to Lin's immigration status, the result of Chen's conviction "would have been different." Greiner 417 F.3d at 319. As a result, Chen's ineffective assistance claim is also denied.

## CONCLUSION

For the foregoing reasons, I DENY Chen's petition for a writ of habeas corpus. Because he has not made a substantial showing of the denial of any constitutional right, I also decline to issue a certificate of appealability. See 28 U.S.C. § 2253.

SO ORDERED.

Dated: March 4, 2022
Brooklyn, New York

Carol Bagley Amon
United States District Judge